## McClary et al. v. McClary et al.

(Decided June 21, 1938.)

TRIMBLE & TRIMBLE and TAYLOR & MILAM for appellants.

V. C. McDONALD for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

J. H. McClary was killed November 2, 1935, in an automobile accident while he was operating a motor truck for his father, H. B. McClary, by whom he was employed. H. B. McClary operated a small store and was also engaged in the trucking business. He had three employees, two of whom, including his son, were truck drivers. He had elected to operate under the Workmen's Compensation Act, and the appellee Bitu-

minous Casualty Corporation was his insurance carrier. The employer reported the accident to the insurance carrier, and, after an investigation, it refused to pay the claim on the ground that the deceased employee had never accepted the provisions of the Workmen's Compensation Act in writing. Mary Ellen McClary, widow of J. H. McClary, and as guardian of his infant child, filed a claim for compensation with the Workmen's Compensation Board; and a referee of the board awarded the petitioners $12 a week for 335 weeks. A motion for review by the full board was sustained, and, after a hearing, a majority of the board entered an order dismissing the application for adjustment of the claim on the ground that the board did not have jurisdiction because the deceased had not elected in writing to accept the provisions of the act at the time of the injury. A petition for review having been filed in the Logan circuit court, a judgment was entered sustaining the award of the Workmen's Compensation Board, and from that judgment, the claimants prosecute this appeal.

It is conceded that the deceased employee did not sign the compensation register accepting the provisions of the act, and further that the employer did not have a register, but it is argued that the appellees, by their conduct, are estopped to deny that it was signed. H. B. McClary testified that he was not familiar with the terms of the Workmen's Compensation Act, and that he relied upon the agent of the insurance company to furnish the blanks, papers, and other instruments required to be executed in order to effect a compliance with the provisions of the act. He was asked these questions, and made these answers:

"Q. At the time you took out this policy did you have any understanding that the company was to furnish you all the blanks and information as to what to do under the Act? A. I understood it that way. Yes, sir.

"Q. Did you rely upon them to furnish you this information? A. Yes sir. Expected them to do that.

"Q. Did they furnish you any register for your employees to sign? A. No sir. The only thing they furnished me was blanks on which to make out reports, and Doctor's certificate."

He also testified that he told all his employees, including his son, that he had elected to accept the provisions of the Workmen's Compensation Act, and carried insurance which would protect an employee in event of injury.

Section 4957 of the Statutes provides:

"Election to operate under the provisions of this act shall be effected by the employee by signing the following notice, to-wit:

"'I hereby agree with (name of employer) to accept the provisions of chapter thirty-three, Acts of 1916, commonly known as the Kentucky Workmen's Compensation act.'

"The election shall be effective from and including the date of signing, which shall be inserted opposite the employee's signature. In case an employee be unable to write, his mark shall be witnessed by a third person, who shall at the time read the notice to the employee. Any number of employees may sign the same notice, provided that there be conspicuously written or printed at the top of each page thereof on which signatures appear a copy of the above form of notice. * * *

"Identification of such signature or mark of the employee shall constitute conclusive proof of his election to operate under the provisions of this act, in any hearing or proceeding in which such election may be material or in issue."

Our present Compensation Act is elective, and neither the employer nor employee comes under it until they voluntarily accept it. It is this fact that renders the act constitutional. Greene v. Caldwell, 170 Ky. 571, 186 S. W. 648, Ann. Cas. 1918B, 604; McCune v. Pell & Brother, 192 Ky. 22, 232 S. W. 43. The burden of proof that the employee had accepted the provisions of the act is upon him if that fact is denied. In Pope Mining Company v. Brown, 194 Ky. 714, 240 S. W. 755, the single issue in the case was whether or not the employee had accepted the provisions of the act. After quoting section 4957 of the Statutes, the court said (page 756):

"Section 4956, Kentucky Statutes, provides that, when an employer accepts the provisions of

the act, he must do it in writing, and the writing must be signed by him. It thus appears, that the statute has prescribed a specific mode for the acceptance of the provisions of the law by both the employer and the employee. In each instance it requires their signatures to the notice required of that fact. It will be presumed that this mode of acceptance is required that there may be no uncertainty upon the subject, which would arise if an election was left to the uncertain recollections of witnesses and oftentimes the misunderstood declarations of the parties. Section 4958, Kentucky Statutes, requires the written evidence of the election of the employees to be preserved, under a penalty for their willful destruction or secretion, erasure, or obliteration. While section 4957, supra, provides that the 'identification of such signature or mark of the employee shall constitute conclusive proof of his election to operate under the provisions of the act,' it is not held that proof of the election of an employee may not be shown by any other competent evidence than exhibition of the signature, where same cannot be shown for any reason, but it seems that, before an employee can be considered to have elected to accept the provisions of the act, it must be proven substantially that he made the election in writing by signing a declaration to that effect.''

The only exception to the requirement that the provisions of the Compensation Act must be accepted in writing by the employee in order to give the Compensation Board jurisdiction is where the employee, under the belief that he is under the act, is led to act to his detriment by his employer. Then the doctrine of estoppel applies, and the employer is estopped to deny that the employee had not signed the compensation register. Appellants invoke that doctrine in this case, but no element of estoppel is pointed out. The appellee insurance carrier made an investigation as soon as the claim for compensation was filed, and promptly denied liability. Appellants cite and rely upon a number of cases in support of their contention that the appellees are estopped to deny that the deceased employee had accepted the provisions of the Compensation Act in writing. All of these cases are distinguishable on their facts from the case before us, and we shall refer only to

the more pertinent ones. In Fell Company v. Elswick, Sr., 194 Ky. 641, 240 S. W. 373, the employee's name appeared on the employer's compensation register. His name was signed and witnessed by a foreman who testified it was not his practice to write a name of an employee thereon unless authorized so to do. It was held that there was some evidence to sustain the board's finding that the foreman signed and witnessed the name of the employee in the latter's presence and at his direction, and that the employee thereby accepted the provisions of the act in writing. In Sunlight Coal Company v. Floyd, 233 Ky. 702, 26 S. W. (2d) 530, the case was treated by the parties as being under the Compensation Act. The accident was reported by the employer to the Compensation Board on form No. 7, as required by the act, and the agreement for compensation was signed by the parties on form No. 9, prescribed by the Compensation Board. This agreement fixed the employee's compensation at $15 per week for an indefinite period. After several payments had been made, and after he had been discharged from the hospital, the employee was told by his employer that he would have to go to the Compensation Board for final payment. Accordingly, he applied to the board for adjustment of his claim, and several months later, after his right of action at common law had been barred, a motion was made to dismiss on the ground that he had not signed the compensation register. Under the circumstances, it was a clear case for the application of the doctrine of estoppel. In Junior Oil Company v. Byrd, 204 Ky. 375, 264 S. W. 846, an employee who had been injured was induced by his employer and its insurance carrier to sign the register and to accept compensation under the provisions of the act. It was held that this was an agreed settlement and was binding, and that the employee would have been estopped by his actions from suing the employer at common law for his injuries, and, consequently, the employer and its insurance carrier were estopped to deny that the employee had accepted the provisions of the act. In L. E. Marks Company v. Moore, 251 Ky. 63, 64 S. W. (2d) 426, the employee had signed the compensation register, and the employer had filled out the necessary blanks to be filed with the Compensation Board signifying its intention to operate under the act. These papers were left with the agent of the insurance carrier to be filed with the Compensa-

tion Board, but the insurance agent failed to file them until after the employee was injured. It was held that the employer was estopped to deny that it was operating under the act. The facts in Ramey v. Broady, 209 Ky. 279, 272 S. W. 740, where it was held that the insurance carrier was estopped to deny that the employer had elected to operate under the act, were very similar to those in the Moore Case. In Blue Diamond Coal Company v. Sizemore, 254 Ky. 102, 71 S. W. (2d) 11, it was merely held that there was some competent evidence to sustain the finding of the board that the employee had actually signed the compensation register.

A complete answer to appellants' contention in the instant case is that nothing was done by the appellees which affected the rights of the deceased employee or his dependents. Under the facts, the employee would not have been estopped to sue his employer at common law for any injuries received by him in the course of his employment, and neither he nor his dependents were deprived of that right by any act of the appellees. In order to sustain appellant's contention, it would be necessary to hold that a verbal agreement to operate under the act would constitute a compliance with its terms. The language of the act is plain and unambiguous, and requires that there must be an election on the part of the employee as to whether he will accept the provisions of the act, and if he elects to accept its provisions, the election must be in writing. As was said in McCune v. Pell & Bro., supra (232 S. W. page 45):

"It is clear that the constitutionality of the present Compensation Act is based upon the facts that the acceptance of the act is, under its terms, a purely voluntary matter of election by the employer and employe, and that each and all of the provisions of the act become effective and binding upon employer and employe solely through this voluntary acceptance, which, in effect, when made by both, becomes an agreement or contract between the parties. Without this acceptance by both employer and employe the act cannot, nor can any of its provisions, apply to either. See [Kentucky] State Journal Company v. Workmen's Compensation Board, 161 Ky. 562, 170 S. W. 437, 1166, L. R. A. 1916A, 389, Ann. Cas. 1916B, 1273; Greene v. Caldwell, 170 Ky. 571, 186 S. W. 648, Ann. Cas. 1918B, 604.

"Therefore, it is apparent that the all-important matter at the very threshold of the relation of employer and employe is that of preserving in some form indisputable evidence of the acceptance or nonacceptance of the act by each. It needs no argument to demonstrate how important such indisputable evidence is to the employe, for he is not only the chief beneficiary of the act, but is the one whose rights must frequently depend upon the preservation of such evidence. Death or even disability of the employe might, in many cases, render it impossible to prove the acceptance, unless the evidence is preserved in some indisputable form. If it were not so preserved, acceptance of the act might frequently be disputed after the employe has suffered injury, and great injustice might be suffered by such an employe who had depended upon the act for his protection. The Legislature, therefore, sought to put this matter of evidence of acceptance of the act beyond the possibility of dispute. To this end it provided in section 73 of the act that the employer should evidence his election by signing and filing with the board a written notice to that effect, the terms of which are stated in the act; and it is further provided in section 74 of the act that the employee should evidence his election by signing a certain written notice to that effect, the terms of which are set forth in the act. As to employes, the act (section 74) further provides that the election on their part 'shall be effective from and including the date of signing, which shall be inserted opposite the employer's signature.'

'It is apparent, therefore, from these carefully drawn provisions, that it was the purpose of the Legislature to leave no room for dispute between the parties or as between them, or either of them and the insurance companies carrying the risk concerning the election of the employer and employe. If the written notice was signed and preserved as the act directs, this evidence of acceptance is conclusive and final. If no such written notices are signed as the act provided, this fact is conclusive evidence that no acceptance was made."

No element of estoppel being shown, the judgment is affirmed.